GEORGE R. SMITH *vs.* BAY STATE DREDGING & CONTRACTING CO.

Suffolk.    December 14, 1931. — December 28, 1931.

Present· RUGG, C.J., WAIT, SANDERSON, & FIELD, JJ.

*Negligence,* Pollution of public waters, In dredging. *Nuisance. Proximate Cause. Evidence,* Matter of conjecture. *Practice, Civil,* Interrogatories.

At the trial of an action of tort against a dredging company for damage to lobsters belonging to the plaintiff, there was evidence for the plaintiff that he kept the lobsters in lobster cars floating about eight inches above the surface of the water near a wharf in a harbor; that the defendant, an independent contractor, was hired to remove an accumulation of refuse under the wharf; that there was nothing to obscure the view between the plaintiff's lobster cars and the place where the defendant's dredger was working; that the defendant on two days dug a hole near the wharf in such a manner that the water near the lobster cars was made muddy, but the lobsters were not injured; that the plaintiff did not believe that the dredging operations would be harmful to his lobsters; that, without notice to the plaintiff, the defendant on the third day scraped the refuse from under the wharf and dumped it into the hole previously dug, whereupon the water became inky with a bad smell coming from it, and the lobsters were tainted with the smell of the refuse and were killed or weakened; and that such condition of the water caused the damage to the lobsters. The plaintiff introduced the defendant's answers to interrogatories to the effect that the defendant did not know that there were lobsters in the cars or that its operations would be harmful to them. There was evidence for the defendant to show that the injury to the lobsters was due to conditions for which the defendant was not responsible. *Held,* that

(1) The plaintiff's evidence warranted a finding that the scraping out of the refuse by the defendant caused the damage to the lobsters: that question was not left a matter of conjecture notwithstanding the evidence as to other causes of the damage;

(2) A finding was warranted that the defendant knew or should have known that there were lobsters in the cars and that its operations under the wharf would cause pollution of the water at the place where the lobster cars were floating;

(3) If the defendant did not know that such pollution would damage the lobsters, it should have ascertained whether this result would be likely to follow from its operations before it commenced them and should have notified the plaintiff; and its failure to do so warranted a finding of negligence on its part;

(4) Because of the inferences which might be drawn from the other testimony in the case, the plaintiff was not bound by the defendant's answers to interrogatories introduced by the plaintiff;

(5) It could not have been ruled as a matter of law either that the plaintiff had notice that the defendant would be engaged in operations which would so pollute the water as to injure his lobsters, or that the defendant was excused from giving notice of the pollution of the water it was about to cause in or near the lobster cars, or that the plaintiff was guilty of contributory negligence;

(6) A verdict for the plaintiff was warranted.

TORT. Writ dated September 28, 1926.

At a trial in the Superior Court before *Walsh,* J., the judge ordered a verdict for the defendant at the close of the opening statement to the jury by the plaintiff's counsel, and an exception by the plaintiff to such ruling was sustained by this court in a decision reported in 272 Mass. 183.

The action thereafter was tried before *Bishop,* J. Material evidence is stated in the opinion. The judge denied a motion by the defendant that a verdict be ordered in its favor. There was a verdict for the plaintiff in the sum of $650. The defendant alleged an exception.

*H. R. Donaghue,* for the defendant.

*J. D. Crook,* for the plaintiff, submitted a brief.

SANDERSON, J. This is an action of tort to recover for damage to the plaintiff's lobsters stored in lobster cars floating at his wharf on Northern Avenue, in Boston, alleged to have been caused by the defendant's scraping of refuse matter from under an adjacent wharf known as Fort Hill Wharf. Both wharves abut on Fort Point Channel, a name applied to that portion of Boston Harbor, inside and outside of the harbor line, the harbor line being beyond the wharves in question. A verdict was returned

for the plaintiff on the first count, the plaintiff having waived his second count. The defendant's exception is to the refusal of the trial judge to grant its motion that a verdict be directed in its favor.

The first count of the declaration alleges in substance that, in connection with the plaintiff's business as a dealer in lobsters and within his right as a tenant of the property where his place of business is conducted, he has for a long time maintained lobster cars in the water adjacent to the property for the storage of live lobsters; that on July 17, 1926, and prior thereto, he had live lobsters stored in the cars, and on or about that date the defendant did dredging in the bottom of the channel beside and within a few feet of the cars, and deposited in the hole so dredged refuse matter removed from the bottom of adjacent docks of the garbage transfer station; that this work brought about an unusual condition in the waters whereby they were polluted, and as a result many of the lobsters were killed and others so damaged that they could not be sold at full market price; that the defendant disregarded the rights of the plaintiff and gave no consideration to the fact that its operations might injure the plaintiff's property; that the defendant was negligent in that it gave no notice to the plaintiff of its intention to commence operations so that the plaintiff might have opportunity to dispose of or remove his goods and that the plaintiff should be reimbursed for the loss sustained by him through the negligence of the defendant.

Fort Hill Wharf is a covered wharf, situated about one hundred feet from the plaintiff's wharf and place of business. It is owned by the city of Boston and used for the disposal of garbage and other refuse. For many years scows had been pushed under the wharf and refuse matter dumped into them from wagons through a hopper in the flooring of the wharf, and the scows when filled were towed down the harbor. In the filling of the scows some of the refuse matter fell over the sides thereof, filling the space underneath the wharf, until after a period of time scows could not easily be pushed thereunder and it became neces-

sary to remove this refuse matter from under the wharf. In 1926 the defendant entered into a contract with the city to do this work of removal, the city having obtained the necessary permits from the State and Federal governments. The contract provided among other things that the defendant was to give all notices. The plaintiff raised no question as to the manner in which the work was done.

On the morning of July 15, 1926, the defendant's employees towed a large dredger into Fort Point Channel in front of Fort Hill Wharf and commenced operations by dredging a hole at that place. When the hole was completed the work of scraping the refuse from underneath the wharf began. This was done with a rake-like scraper which was pulled under the wharf by an endless chain and then dragged out, this operation of scraping being wholly under water. In this way the refuse matter under the wharf was scraped into the hole previously dug and at a later date loaded into scows and carried down the harbor. The plaintiff had occupied his place of business for about a year under a lease. On the fifteenth, sixteenth and seventeenth of July he had tied up to his wharf four lobster cars, sixteen feet wide, thirty feet long and four feet deep, riding about eight inches above the water. He testified that he knew of nothing to prevent the defendant's employees from seeing the lobsters being pulled up in the lobster cars; that at times on July 15 and 16, when the dredger was working in front of the wharf, it came as near as twenty feet so that men on the lobster cars and on the dredger talked to each other.

The plaintiff's evidence tended to prove that on the fifteenth and sixteenth of July, when the defendant was digging a hole near the end of the wharf, the water in the neighborhood of the plaintiff's place of business was made brown and muddy by the defendant's dredging, but that there was then no odor from it and the lobsters in the water were not injured; that the plaintiff did not believe that the dredging operations would be harmful to his lobsters; that he did not know that the defendant was going to dig out refuse under the wharf; that he received no notice that such work was to be done, but that on the seventeenth of

July the defendant's dredger was digging out refuse under the wharf; that the water then was in an inky condition, with a bad smell coming from it, and the lobsters were tainted with the smell of garbage; that most of the lobsters were dead and others were weakened, and that he was of opinion that the bad smelling water, the filth in the water, killed the lobsters, although he did not until then know that work of the type being done would produce such results. There was evidence tending to prove that warm weather or fresh water might kill lobsters, and also to prove that the injury to the plaintiff's lobsters was not so caused. The plaintiff introduced the defendant's answers to interrogatories tending to show that it did its work in a careful manner, and that the fact that the lobster cars were only about eight inches above the water was a reason why those in charge of the dredging would be prevented from seeing them; that the reasons for not notifying the plaintiff of the fact that it was going to drag out from under the wharf garbage and other refuse were that it did not know that lobsters were being stored by the plaintiff near his place of business, and had no reason to know or believe it; that the plaintiff gave it no notice of the fact that lobsters were stored there, or that the operations about to be conducted would be detrimental to lobsters; that it had no previous knowledge that operations of the sort it was about to begin would be harmful to any form of life; that it did not then and does not now believe that its operations could adversely affect any form of life. The plaintiff testified that there was nothing to obscure the view between his place of business and the place where the dredger was working, and that on the seventeenth of July he could see that they were dredging something under the water.

The evidence introduced by the defendant tended to prove that the water of the channel was always dirty; that the refuse was carefully scraped from under one slip and put into a hole which it dug; that there was a constant odor at all times from Fort Hill Wharf, and that there drained into Fort Point Channel one brook, four surface drains and thirty or more sewers; that Fort Point Channel had a dead

end and the incoming tide took everything up to the dead end and the outgoing tide brought it back again.

This case was considered in *Smith* v. *Bay State Dredging & Contracting Co.* 272 Mass. 183, where it was held that the trial judge erred in directing a verdict for the defendant on the plaintiff's opening statement. In that case the court said that in doing this work the defendant could not create a nuisance and would be liable for negligence.

1. The testimony concerning the events which accompanied or followed the dredging under the wharf and the tainted smell upon the lobsters, when considered in connection with the testimony of the plaintiff that odors are harmful to and may kill lobsters and that in his judgment filth in the water killed them, warranted the jury in finding that the operations of the defendant in raking out the polluting matter under the wharf caused the damage of which the plaintiff complained. The testimony of the plaintiff as to the effect of fresh or warm water on lobsters and that offered by the defendant as to the condition of the water in Fort Point Channel due to causes for which the defendant was not responsible and the defendant's suggestions as to other possible causes of injury to lobsters did not require a finding in its favor on this issue. The conclusion of the jury that the acts of the defendant caused the damage had a firm basis of fact upon which to rest. The evidence and rational inferences to be drawn therefrom removed the question from the field of conjecture.

2. There was evidence to warrant a finding that the defendant knew or should have known that its dredging operations were likely to cause damage to the plaintiff's lobsters. The jury would be warranted in finding that the defendant knew or should have known that there were lobster cars with lobsters in them at the plaintiff's place of business and that it knew or should have known that its operations under the wharf would cause pollution of the water at the place where the lobster cars were floating. Before it caused such pollution of the waters as would kill the lobsters of the plaintiff, it should have ascertained, if it did not know, whether this result would be likely to follow

from its operations. If it did not have or failed to get this information, and failed to notify the plaintiff of the pollution of the water that would result from its operations, it could be found to be negligent. In *Wesson* v. *Washburn Iron Co.* 13 Allen, 95, 104, the court said: "The rule of law is well settled and familiar, that every man is bound to use his own property in such manner as not to injure the property of another, or the reasonable and proper enjoyment of it; and that the carrying on of an offensive trade or business, which creates noisome smells and noxious vapors, or causes great and disturbing noises, or which otherwise renders the occupation of property in the vicinity inconvenient and uncomfortable, is a nuisance for which any person whose property is damaged . . . may well maintain an action to recover compensation for the injury." In *Leahan* v. *Cochran*, 178 Mass. 566, 570, the court held that it was not essential to the plaintiff's case to prove that the defendant had notice that the maintenance of a conductor carrying water from the roof of his building to a public sidewalk might infringe on the rights of others, that the defendant as owner must have known or be presumed to have known that the conductor, in so far as its natural operation caused the formation of ice upon the sidewalk, was creating a nuisance.

Because of the inferences which might be drawn from the other testimony in the case, the plaintiff is not bound by the defendant's answers to interrogatories introduced by the plaintiff to the effect that it had no reason to know that the operations it was about to begin would be claimed to have an adverse effect on any sort of life. On this point the case is distinguishable in its facts from *Boudreau* v. *Johnson*, 241 Mass. 12, 15. Upon the testimony of the plaintiff as to what he saw or knew of the defendant's operations it could not be ruled that the plaintiff had notice that the defendant would be engaged in operations which would so pollute the water as to injure his lobsters or that the defendant was excused from giving notice of the pollution to the water it was about to cause in or near the lobster cars. The case is distinguishable from *Hunt* v. *Economic*

*Machinery Co.* 231 Mass. 155, where the court held that the defendant was not bound to warn the person injured of an obvious danger.

3. The court could not have ruled that the plaintiff was guilty of contributory negligence. He testified that the excavating of the hole in front of the wharf which was being done on July fifteenth and sixteenth caused no odor and was not injurious to lobsters and that he did not know that the defendant was going to remove refuse under the wharf until he saw the men engaged in this work on July 17, and it is not clear that the plaintiff knew that work there would produce the damage to lobsters which could have been found to have resulted therefrom. A fair interpretation of the testimony of the plaintiff would not justify us in saying as matter of law that he knew or should have known that the operations of the defendant would or might so pollute the water as to injure the lobsters and that he left them in the cars taking a chance that this result would not happen. At the end of the cross-examination on this subject he testified that he did not know that what was going to be done would hurt the lobsters and he thought "there was no chance."

The defendant has not shown error of law in the refusal of the trial judge to allow its motion for a directed verdict.

*Exceptions overruled.*